Wayne TURNER., et al., Plaintiffs,

v.

**D.C. BOARD OF ELECTIONS AND ETHICS, Defendant.**

**No. CIV. A. 98–2634RWRJMF.**

United States District Court,
District of Columbia.

Oct. 23, 2001.

Arthur Barry Spitzer, American Civil Liberties Union, Washington, DC, for plaintiffs.

Nancy S. Schultz, Office of Corporation counsel, D.C., Washington, DC, Laurie

Pouzzner McManus, Arlington, VA, for Dist. of Columbia Bd. of Elections and Ethics, defendant.

Mark A. Schaefer, Mirel & Algei, Washington, DC, for DC Branch NAACP, Stand Up for Democracy Coalition, Marylanders for Democracy, amicus.

Mark A. Schaefer, Mirel & Algei, Washington, DC, for DC chapter League of Women Voters, Dist. of Columbia Chapter of Republican Nat. African-American Council, DC Democratic State Committee, D.C. Statehood Party, Gay and Lesbian Activists Alliance, Gertrude Stein Democratic Club, Greater Washington Chapter of Americans for Democratic Action, Libertarian Nat. Committee, Inc., Metropolitan Washington Council AFL-CIO, movants.

M. Miller Baker, McDermott, Will & Emery, Washington, DC, for Voting Integrity Project Inc., movant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This matter is before me for resolution of plaintiffs' *Motion for Attorneys' Fees and Expenses* against defendant District of Columbia Board of Elections and Ethics ("the Board") and the intervenor and defendant, the United States. My *Memorandum Opinion and Order* of July 24, 2001, denied plaintiffs' motion with respect to the United States under the Equal Access to Justice Act, 28 U.S.C. A. § 2412(d)(1)(A)(1994)("EAJA"), and I now address the Board's liability under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (1994).

## BACKGROUND

The underlying facts of this dispute have been detailed in Judge Roberts' Order of September 17, 1999. *Turner v. District of Columbia Bd. of Elections and Ethics,* 77 F.Supp.2d 25 (D.D.C.1999). The Board placed on the ballot for the November, 1998, election an initiative that would afford seriously ill individuals the right to obtain marijuana without violating the criminal provisions of the D.C.Code. On October 21, 1998, however, Congress passed what has become known in this lawsuit as the Barr Amendment (after its sponsor), which prohibited the use of funds contained in the District of Columbia Appropriations Act to conduct any ballot initiative that sought to legalize the use of a controlled substance, including, of course, marijuana.

The billing entries submitted by plaintiffs' counsel indicate that on the very day the Barr Amendment was enacted, lawyers for the American Civil Liberties Union ("ACLU") began to formulate a legal challenge to the Amendment that they would ultimately bring on behalf of five registered voters on October 30, 1998. Plaintiffs named the Board as the only defendant.

Because the ballots had already been printed when the Barr amendment was enacted, District of Columbia voters voted on the initiative on election day, November 3, 1998. On that day the Board issued a press release explaining that it would not release the voting results of the initiative for fear of violating the Barr Amendment. *Plaintiffs' Motion for Attorney's Fees and Expenses,* Exhibit E.

On November 6, 1998, however, the Board filed a *Motion of Defendant for Expedited Review and Declaratory Judgment,* in which the Board asked this Court to declare that the Barr Amendment violated the "First Amendment rights of the voters of the District of Columbia." *Id.* at 1. The Board sought an order authorizing it to announce and certify the results of

the vote on the marijuana initiative. On November 9, 1998, the United States asked that the application plaintiffs had filed for a temporary restraining order be denied. On November 23, 1998, the United States intervened to defend the Barr Amendment.

Ultimately, Judge Roberts concluded that the Barr Amendment did not preclude counting, announcing, and certifying the results of the marijuana initiative. In reaching that conclusion, Judge Roberts invoked the principle that a construction of a statute which avoids the resolution of constitutional issues is preferred and that, if the Barr Amendment precluded the counting, announcing, and certifying the results of the marijuana initiative, it would be of dubious constitutionality. *Turner*, 77 F.Supp.2d at 34.

By my order of July 24, 2001, I denied plaintiffs' fee petition on the grounds that plaintiffs had failed to meet the jurisdictional deadline EAJA imposes. Initially, plaintiffs took the position that the Board should be liable for "any amount of fees awarded under § 1988 that exceeds the amount awarded under EAJA." Order of July 24, 2001, at 15, quoting *Plaintiffs' Motion for Attorney's Fees and Expenses* at 23–24. In fairness to plaintiffs, I permitted them to discuss the validity of any award against the Board in light of my determination that plaintiffs could not recover any fees against the United States. Plaintiffs have responded by insisting that the Board is obliged to pay all the legal fees incurred from the commencement of the case until Judge Roberts' opinion plus the time spent litigating the validity of their petition for fees. Plaintiffs take this position even though plaintiffs and the Board sought a declaration that the Barr Amendment was unconstitutional, in the face of opposition from the United States.

## INTRODUCTION

Section 1988 empowers the district court, "in its discretion," to provide "[a] reasonable attorney's fee as part of the cost" to the prevailing party in any action brought under 42 U.S.C. § 1983. 42 U.S.C.A. § 1988(b)(1994). "[The] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C.Cir.1995)(quoting *Hensley v. Eckhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

I must first determine that the predicate requirements for 42 U.S.C. A. § 1988 (1994) are met insofar as plaintiffs were prevailing parties and the Board's actions were taken under color of state law. I will then determine whether the Board may be held jointly and severally liable for all the fees plaintiffs incurred; whether, as the Board claims, exceptional circumstances preclude the award of any attorney fees against it; and, if not, what portion of the fees should be paid by the Board.

*Prevailing Party*

■ One of the requirements for an award under § 1988 is that the applicant be a "prevailing party." *District of Columbia v. Patterson*, 667 A.2d 1338 (D.C. 1995). Plaintiff no doubt meets this definition:

> To qualify as a prevailing party for attorneys' fees purposes, a plaintiff must show that the final result represents in a real sense, a disposition that furthers their interest. In applying this inquiry, the court must focus on the precise factual/legal condition that the fee claimant has sought to change, and then determine if the outcome confers an actual benefit or relief from a burden.

*Grano v. Barry,* 783 F.2d 1104, 1108 (D.C.Cir.1986) (citations omitted).

■ Plaintiff here sought to enjoin the Board from withholding the results of the November 3, 1998, ballot initiative, and that is precisely what they achieved through Judge Robert's September 17th, 1999 Order. The Board's argument that plaintiffs were not a prevailing party because the Board was never found to be at fault is inapposite because it confounds two distinct concepts, i.e., "prevailing party" and whether "good faith" is ever a special circumstance justifying denial of a fee award under § 1988. See *infra* at 7. A party prevails irrespective of whether his opponent acted with fault or in bad faith.

*Section 1983 Liability*

■ Defendant argues that an award of attorneys' fees is not in order here because liability for fees under § 1988 is predicated on liability under 42 U.S.C.A. § 1983 (1994), for the violation of constitutional or federal statutory rights under the color of a "statute of any State ... or the District of Columbia." Defendant reasons that, because it did not act under color of a statute of the District or Columbia, but rather of federal congressional legislation, it cannot be held liable under § 1983. This argument ignores that § 1983 itself acknowledges that "[f]or the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." Pub.L. No. 96–170 § 1, 93 Stat. 1284 (1979). *District Properties Associates v. District of Columbia,* 743 F.2d 21, 27 (D.C.Cir.1984), applied this provision in treating a Congressional statute establishing the District of Columbia Administrative Procedure Act as a statute of the District of Columbia. In another case, when the Supreme Court held that a clause of a statute Congress enacted regulating activity near embassies located in the District of Columbia was unconstitutional, this Court, per Judge Gasch, imposed liability for attorneys' fees upon the District of Columbia pursuant to 42 U.S.C.A. § 1988(1994), rejecting the District's claim that it "did not benefit from the statute." *Boos v. Barry,* 704 F.Supp. 5, 9 (D.D.C.1989). Likewise, in this case, the Barr Amendment, although passed by Congress, applies only to the District of Columbia and must be treated as a statute of the District of Columbia for the purposes of §§ 1983 and 1988.

*Joint and Several Liability*

We therefore reach the ironic result of holding the District of Columbia accountable for a Congressional enactment that the District attacked as unconstitutional. Indeed, plaintiffs demand that the Board be jointly and severally liable for all the fees incurred in this case, from the beginning to the end. The Board understandably rejects that claim and argues that this case is one where special circumstances make the award of any fees unjust.

■ Plaintiffs cannot impose joint and several liability upon the District and the United States. A fundamental analogy to well-established tort law is instructive. It is certainly true that multiple defendants found liable for a single injury are deemed to be joint torfeasors and any compensatory damages for that single injury must be awarded jointly and severally against them. *Faison v. Nationwide Mortg. Corp.,* 839 F.2d 680, 686 (D.C.Cir.1987). It is equally true, however, that:

> If two or more persons, acting independently, tortiously cause distinct harms or a single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of

the total harm that he has himself caused.

*Restatement (Second) of Torts* § 881 (1979). In this case, it must be said either that the District and the United States caused plaintiffs two distinct harms, *i.e.,* the fees incurred prior to November 7, and those incurred after November 6, or that the District and the United States caused plaintiffs a single harm, plaintiffs' incurring legal fees, but there is a reasonable basis for dividing responsibility between them. In either instance, it is irrational and unfair to force the District to pay fees plaintiffs incurred after November 6, 2001, when the District and plaintiffs jointly sought the same relief and all the work plaintiffs' counsel did was directed against the arguments being made by the United States and the United States alone.

*Special Circumstances*

 A prevailing party in a § 1983 action is generally entitled to attorneys' fees unless special circumstances would render the award unjust. *Hensley,* 461 U.S. at 429, 103 S.Ct. 1933; *Grano,* 783 F.2d at 1111 (applying the same rule used in *Commissioners Court v. United States,* 683 F.2d 435, 438 (D.C.Cir.1982)). Special circumstances, however, have been held to be quite rare and the exception is narrowly construed. *Hatfield v. Hayes,* 877 F.2d 717, 719 (8th Cir.1989). *See* 2 M. Schwartz & J. Kirklin, *Section 1983 Statutory Attorney Fees* § 3.13 (3d ed.1997).

A commonly argued special circumstance is the defendant's good faith interpretation of a law that is ultimately held to be in violation of a federal right. Yet it is widely recognized that a defendant's good faith does not ordinarily constitute a "special circumstance" in determining the propriety of an attorney fee award. *Williams v. Hanover Housing Authority,* 113 F.3d 1294 (1st Cir.1997); *Harrington v. DeVito,* 656 F.2d 264 (7th Cir.1981), *cert. denied* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982); *Love v. Mayor,* 620 F.2d 235 (10th Cir.1980); *Riddell v. Nat'l Democratic Party,* 624 F.2d 539 (5th Cir.1980).

Rejecting any claim of "good faith", plaintiffs argue that had the Board of Elections not construed the Barr Amendment so cautiously to preclude even the expenditure of the nominal amount of money it would have taken to tabulate and announce the results, this lawsuit would not have existed and plaintiffs would not have had to spend a penny in legal fees. That argument is buttressed by Judge Roberts' ultimate conclusion that the Board was wrong and that the Barr Amendment did not preclude the tabulation and announcement of the results. But, hindsight is always $^{20}/_{20}$ and the worst that could be said of the Board is that it could have been more courageous in its interpretation. At the risk of another "but," one also has to note the utter dependence of the District of Columbia upon Congress for its budget. In light of this truly unique political arrangement, it is understandable to conclude that a cautious interpretation of the Barr Amendment was the better part of valor.

 In any event, the proper focus in § 1983 cases is never on the defendants' "fault." It must never be forgotten that Congress enacted the fee shifting provision not to punish defendants but to encourage lawyers to undertake litigation to vindicate the constitutional and statutory rights of those who could not otherwise afford to vindicate those rights.[1] While the Board

---

1. In fact, the above-cited cases, relied on by the defendants, illustrate that the award of attorneys' fees is "not designed merely to penalize defendants, but to encourage injured individuals to seek relief." *Id.* (citing *Newman v. Piggie Park,* 390 U.S. 400, 402, 88

did join plaintiffs in seeking a declaratory judgment that the Barr Amendment was unconstitutional, it did so only after being sued itself. There is absolutely no indication anywhere that the Board would have brought the lawsuit itself had it not been sued. It therefore must be said that, but for plaintiffs' bringing the lawsuit, the results of the initiative would have never been published. The fee shifting statute is designed to create an incentive for "private Attorney Generals" to bring meritorious lawsuits by vindicating the citizens' rights when the government may be incapacitated by political or budgetary considerations from bringing them. *Boos*, 704 F.Supp. at 9. Plaintiffs fall perfectly within that rubric and the interest in encouraging lawyers to undertake litigation compels the conclusion that this is not one of those rare cases where the award of fees is fundamentally unjust.

## Apportionment of Fees

It hardly follows that the Board is responsible for all of the fees claimed. Although joint and several liability is urged by plaintiffs, the court is obliged to "make every effort to achieve the most fair and sensible solution that is possible."[2] *Grendel's Den Inc. v. Larkin*, 749 F.2d 945, 960 (1st Cir.1984). Such an effort entails an apportionment of the fee liability.

There is no single formula for determining fee apportionment in a § 1988 action, and there is no relevant case law in this Circuit. In other Circuits, the various apportionment factors and methods employed have included: equal division among the defendants; the jury's assessed actual damages; holding a particular defendant who is solely or largely responsible for a single claim liable for fees related to that claim; relative culpability of the various defendants; and time spent by the plaintiff in preparing the case against each defendant. *See generally Council for Periodical Distributors Associations v. Evans*, 827 F.2d 1483, 1487 (11th Cir.1987) (citations omitted). The last two of these factors are particularly appropriate in the instant case. In *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118 (9th Cir., 1981), the court considered the time spent by plaintiffs' attorneys against a particular defendant. In that case, as here, plaintiff had sued a federal and a state defendant, and the federal defendant had been exempted from liability for its share of attorney's fees. The District Court then apportioned 75% of the total fees to the state defendants, as they were the primary focus of the plaintiff's actions. The Circuit Court subsequently affirmed this apportionment method, noting that at least 75% of plaintiff's counsel's preparation was directed towards the state defendants.

S.Ct. 964, 966, 19 L.Ed.2d 1263). Thus, the question of fairness centers not on the defendant, but on the plaintiff. In the instant case the plaintiffs had no intervenors with similar interests and their interests were soundly vindicated as a portion of the statute was found unconstitutional. Moreover, if the District of Columbia were absolved of its obligation to pay the award, plaintiffs or their counsel would have to absorb the costs, which would be unjust to them and would deter future suits. *See Piggie Park*, 390 U.S. at 402, 88 S.Ct. at 966. Such a result would fly in the face of the premium that the Civil Rights Act places on litigants as private attorneys general vindicating individual rights. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420, 98 S.Ct. 694, 699, 54 L.Ed.2d 648; *Miller v. Staats*, 706 F.2d at 340.

*Boos*, 704 F.Supp. at 9.

2. The fact that I denied an award of fee liability against the United States in my Order of July 23, 2001, is irrelevant to assessing liability against the D.C. Board. Plaintiffs failed to meet the strict deadlines for fee requests of EAJA, and the D.C. Board should not have to shoulder the costs of this mistake.

*Adams,* 657 F.2d at 1125. This time-spent approach was also endorsed in *Jenkins by Agyei v. State of Mo.,* 838 F.2d 260 (8th Cir.1988) and *Nash v. Chandler,* 848 F.2d 567 (5th Cir.1988).

Under the time-spent approach, plaintiffs should be able to recover no more than the fees and expenses incurred in opposing the D.C. Board. Thus, the fees related to the preparation of the complaint and all other work conducted prior to the Board's request for a declaratory judgment on November 6, 1998, when it effectively ceased opposing plaintiffs, are potentially recoverable under this approach. A review of plaintiffs' exhibits shows that Graham Boyd spent 69.9 hours on the matter up to and including November 6. Art Spitzer and Aaron O'Toole spent 13.6 hours and 24 hours, respectively, on pre-November 7 matters. Under the current edition of the matrix established in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983), these figures amount to $25,590. Plaintiffs also seek to recover $569 in expenses incurred prior to November 8, bringing the total to $26,159.

██ But plaintiffs do not deserve all of this amount because the degree-of-culpability factor calls for a further reduction, as the Board was not primarily responsible for the violation. As the court in *Evans* wrote, "In cases such as the one now before the court, however, it may be appropriate for a district court to apportion fees between the active instigator of a wrong and a more passive co-defendant who had a more peripheral or ministerial role in the wrong." *Id.,* at 1487. *See also Jose P. v. Ambach,* 669 F.2d 865, 871 (2d Cir.1982). Here, it is clear that the United States was overwhelmingly responsible for initially suppressing the election results, because it was Congress that passed the legislation that restricted the Board's ability to certify the ballot results. Considering that Congress passed the Barr Amendment and, as I have explained, the Board's initial position as to the Barr amendment was cautious but not unreasonable, I will apportion the fees 90% to the United States and 10% to the Board. Thus, plaintiffs shall be awarded $2,616 in fees and expenses, which is 10% of their fees incurred as of November 6, 1998.

*Fees on Fees Liability*

In addition to the liability for fees incurred in litigating the plaintiff's claim, I must also determine the "fees on fees" liability for time spent preparing the fees petitions. The following chart indicates the hours spent by each of the plaintiffs' attorneys in preparing briefs on the fees motions. These figures are gleaned from plaintiffs' attorneys fees briefs. The fourth column, "Hours Spent on Unspecified Fees," represents fees work where the plaintiffs failed to distinguish between the § 1988 claims and the EAJA claims.

| Attorney | Hours Spent on EAJA Fees | Hours Spent on 42 USC 1988 Fees | Hours Spent on Unspecified Fees | Rate | Total For Verified Hours on 1988 | Total for Unspecified Hours |
|---|---|---|---|---|---|---|
| Graham Boyd | | | 33.1 | 245 | | $8,109.50 |
| Alicia Young | 31 | 9 | 86.5 | 160 | $1,440 | $13,840 |
| Arthur Spitzer | | 6.5 | 7.2 | 350 | $2,275 | $2,520 |
| Aaron O'Toole | | 0 | 0 | 160 | | |
| | | | | | $3,715 | $24,469.50 |

Plaintiffs seek a total of $33,140.50 for their services in litigating the fees motions. Right away, I shall strike $4,960 from this total, which represents Alicia Young's 31 hours researching EAJA issues, as plaintiffs cannot possibly expect to bill the District for arguments that were applicable only to the United States and that did not prevail in the first place. Thus, I am left to consider the remaining $28,184.50, which represents $3,715 of work that is attributed solely to the § 1988 claim and $24,469.50 of unspecified fees work that is not discretely attributed by plaintiffs to either the EAJA claim or the § 1988 claim.

The unspecified hours spent on the fees motions present the more difficult questions with regard to fees liability. One approach would be to deny all of this portion of the fees application, on the grounds that plaintiff should have been more diligent in documenting the allocation of time between the two separate claims. But this seems unduly harsh, given that plaintiffs cannot reasonably be expected to have foreseen the ultimate importance of this allocation. The more sensible approach is to apportion the hours spent on the fees motions according to the respective length of each portion of plaintiffs' motions. This makes intuitive sense, as the relative length of the brief sections is a rough coefficient of the relative time spent researching and editing those sections.

The plaintiffs' April 10th, 2000, motion for fees runs 24 pages. Of these, seven pages cover the § 1988 fees claim, while over 11 pages address the EJEA claim.[3] In the plaintiffs' Reply in support of their fees motion, roughly nine pages cover their claim to fees under § 1988 (1994), while eight pages cover fees under the EAJA statute. In total, of the 35 combined substantive pages from the two briefs, 16, or 46%, address § 1988. Forty-six percent of $24,469.50 is $11,256. Adding in the $3,715 attributed solely to the § 1988 fees claim, I arrive at a total of $14,971 that can fairly be attributed to the § 1988 claim.

But this does not mean that plaintiffs deserve $14,971. Rather, I shall reduce this figure by 90%, because I found D.C. liable for only 10% of the fees incurred in the period prior to November 6, 1998. This reduction in the fees on fees award is entirely appropriate, given plaintiffs' lack of success in its motion for fees against D.C. *See Ustrak v. Fairman*, 851 F.2d 983 (7th Cir.1988). It would make little sense to fully reward plaintiffs for their efforts in arguing an essentially unsuccessful fee motion. Ten percent of $14,971 equals $1,497, and this amount shall be paid by the Board. to plaintiffs.

Added to the $2,616 in liability for the pre-November 7th substantive work, plaintiffs' total fees award shall be $4,113.

A separate order accompanies this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion issued today, it is hereby,

**ORDERED** that Plaintiff's *Motion for Attorneys' Fees and Expenses* [# 61] is **GRANTED IN PART** and **DENIED IN PART** as to the District of Columbia Board of Elections. It is further hereby,

---

3. The remaining pages comprise an introduction, a conclusion and a discussion of joint and several liability.

**ORDERED** that defendant District of Columbia Board of Elections and Ethics pay plaintiffs $4,113.00

**SO ORDERED.**