Inna **STAVITSKY, Yudelka Tapia, Anita Martinez, Virginia Openheimer, Pedro J. Berrios, Inginia Garcia, Marcia Williams, Garry Gorlesk, Yefim Karlik, Klara Dralyuk, Paul Zalkin and Liza Okun, Plaintiffs,**

v.

**BOARD OF ELECTIONS IN THE CITY OF NEW YORK, Anatoly Eyzenberg, Alec Brook–Krasny and Nilda Velasquez, Defendants.**

**Civil Action No. CV–01–5639 (DGT).**

United States District Court, E.D. New York.

April 30, 2002.

Harry Kresky, Harry Kresky and Gary Sinawski, New York City, for Plaintiffs.

Daniel R. Simonette, Law Offices of Daniel R. Simonette, Brooklyn, NY, Flora Edwards, New York City, for Defendants.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Plaintiffs originally brought this action on August 21, 2001, complaining that their constitutional rights under the First and Fourteenth Amendments were violated when a Kings County State Supreme Court ordered plaintiff Inna Stavitsky's name kept off the Democratic party primary ballot in a New York City Council race, and a Bronx County Supreme Court ordered plaintiff Yudelka Tapia's name off the Democratic party primary ballot in a different New York City Council race. Plaintiffs moved for a preliminary injunction to direct the Board of Election to place Stavitsky's and Tapia's names on the appropriate ballots. On August 29, 2001, plaintiff Stavitsky's motion was granted and plaintiff Tapia's motion was denied in a decision from the bench. On October 23, 2001, Stavitsky and five other plaintiff's associated with her candidacy (Garry Gorlesk, Yefim Karlik, Klara Dralyuk, Paul Zalkin, and Liza Okun) ("Stavitsky plaintiffs") moved under 42 U.S.C. § 1988 for $14,755 in attorneys' fees and $150 in costs.

### Background

On or about July 11, 2001, Stavitsky filed a petition to be a candidate in the Democratic primary for the New York City Council's 47th District seat. To be placed on the ballot for this office, New York State election law requires the petition to contain more than 900 signatures of

enrolled party members who live in the district. Stavisky's petition contained 2,878 signatures. Two days later, defendant Anatoly Eyzenberg, another candidate in the primary, filed a general challenge with the defendant New York City Board of Elections to Stavitsky's petition. On July 28, 2001, Eyzenberg filed with the Board specific grounds for his challenge to Stavitsky's petition. That same day, the clerk of the Board invalidated 1,874 of Stavitsky's signatures, leaving her with 1,067 valid signatures.

Separately, on July 23, 2001, Eyzenberg and defendant Alec Brook–Krasny commenced a proceeding in Kings County Supreme Court to invalidate Stavitsky's petition pursuant to New York State Election Law § 16–102. Judge Melvin Barasch conducted a line by line review of Stavisky's petition, and determined that it contained only 897 valid signatures. On August 15, 2001, Judge Barasch issued an order and judgment directing the Board not to place Stavitsky's name on the ballot.

The challenge to Tapia's petition occurred in parallel to the challenge to Stavitsky's petition. Also on or about July 11, 2001, Tapia filed a petition to be a candidate in the Democratic primary for the Council's 14th District seat. Tapia's petition contained 1,944 signatures. Two days later, defendant Nilda Velasquez, also another primary candidate, filed a general challenge to Tapia's petition with the Board. On July 28, 2001, Velasquez filed with the Board specific grounds for her challenge to Tapia's petition. That same day, the clerk of the Board invalidated 1,036 of Tapia's signatures, leaving her with 908 valid signatures.

On July 23, 2001, Velasquez commenced a proceeding in Bronx County Supreme Court to invalidate Tapia's petition pursuant to New York State Election Law § 16–102. Judge Robert Seewald conducted the line by line review of Tapia's petition, and determined that it contained only 895 valid signatures. On August 15, 2001, Judge Seewald issued an order and judgment directing the Board not to place Tapia's name on the ballot.

Stavitsky, Tapia, and other individuals associated with their campaigns filed this action on August 21, 2001 and moved for a preliminary injunction to direct the Board to place their names on the appropriate ballots. Because of the differing procedures employed by the Kings County Supreme Court and Bronx County Supreme Court in dealing with this type of ballot access issue, Stavitsky's motion was granted and plaintiff Tapia's motion was denied in an August 29, 2001 order. Eyzenberg and Brook–Krasny appealed the order on September 7, 2001, and the Second Circuit dismissed their appeal on October 10, 2001.

On October 23, 2001, the Stavitsky plaintiffs moved for $14,755 in attorneys' fees and $150 in costs. The Board responded on November 8, 2001, but Eyzenberg, Brook–Krasny, and Velasquez did not respond at all.

## Discussion

### (1)

Under 42 U.S.C. § 1988(b), a court, in its discretion, may allow a prevailing party reasonable attorneys' fees in a case brought under 42 U.S.C. § 1983. *See, e.g., Koster v. Perales,* 903 F.2d 131, 134 (2d Cir.1990). Although district courts have wide discretion in choosing whether to grant or deny attorneys' fees, the Second Circuit has indicated that "this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust." *Raishevich v. Foster,* 247 F.3d 337, 344 (2d Cir.2001). "The function of an award of attorney's fees is to encourage

the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir.1982).

The calculation of attorneys' fees begin by determining the lodestar, which is the number of hours reasonably expended multiplied by the applicable hourly rate for legal services. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Here, the plaintiffs' attorneys, Harry Kresky and Gary Sinawski, listed 45.4 hours which they claim they spent on the Stavitsky plaintiffs. Kresky and Sinawski claimed a customary hourly rate of $325, which resulted in their request of $14,755 in fees. They also requested $150 in costs to file the action.

■ In deciding whether a party is entitled to attorneys' fees, the court must first determine whether the party prevailed. In this case, only the Stavitsky plaintiffs were granted the relief they sought. Tapia and the plaintiffs associated with her did not prevail, so any fees incurred in prosecuting their case cannot be awarded. Kresky and Sinawski spent much of their time on this case on tasks that benefitted both Stavitsy and Tapia. For example, Kresky stated in his declaration that he spent 2.1 hours preparing the complaint, and Sinawski stated that he spent 8.3 hours working on the brief in support of the motion for a preliminary injunction. Both the complaint and motion for a preliminary injunction were intended to benefit both Tapia and Stavitsky. Accordingly, only half of the attorneys' fees associated with the time spent on tasks that benefitted both Tapia and Stavitsky will be awarded.

As can be best be determined from their itemized declarations of time spent on this case, Kresky spent 22 hours, and Sinawski spent 19.8 hours, on tasks that benefitted both Tapia and Stavitsky, for a total of 41.8 hours. Divided in half, there are 20.9 hours that can be awarded as attorneys' fees. In addition, Kresky listed 3.6 hours that were spent exclusively on Stavitsky. Thus, a total of 24.5 hours of work will be awarded.

■ The "reasonable" rate under § 1988 is "to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 896 & n. 11, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *see also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998). Kresky and Sinawski argue that attorneys with their experience and expertise in the field of election law in major metropolitan areas normally charge between $275 and $375 per hour. However, fee awards in recent cases in the Eastern District of New York have ranged from $200 to $275 for partners. *See Fink v. City of New York*, 154 F.Supp.2d 403, 407 (E.D.N.Y. 2001); *Hiller v. County of Suffolk*, 199 F.R.D. 101, 109 (E.D.N.Y.2001). Kresky and Sinawski's request for a fee of $325 per hour is clearly excessive. Rather, a fee of $250 per hour is reasonable.

Accordingly, Kresky and Sinawski are entitled to 24.5 hours at $250 per hour, for a total of $6,125 in attorneys' fees, plus $150 for filing the action.

### (2)

■ The next issue is which of the losing parties are required to pay these fees. When multiple parties are liable for attorneys' fees, the district court has the discretion to apportion the fees "according to relative culpability." *Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir.1982). *see also Carroll v. Blinken*, 105 F.3d 79, 82 (2d Cir.1997) (allocation of fee liability between defendants is a matter committed to the district court's discretion). In this context,

"relative culpability" turns "on an estimate not of factual but of legal responsibility." *Id.* That is, "the district court may allocate the fee award between responsible parties, setting the percentage for which each is liable where the claims against the defendants are separate and distinct or where culpability is significantly unequal." *Koster*, 903 F.2d at 139; *see also Turner v. D.C. Board of Elections and Ethics*, 170 F.Supp.2d 1, 5–8 (D.D.C.2001) (apportioning attorneys' fees in election case, and holding that the Board of Elections was only responsible for ten percent of the fees when it was forced by Congress to not certify ballots in a referendum regarding the use of marijuana for medical purposes). In addition, a district court "may hold the responsible parties jointly and severally liable for the fee award." *Koster*, 903 F.2d at 139; *see also Community Television Sys., Inc. v. Caruso*, 284 F.3d 430, 437 (2d Cir.2002). "The only limitation on the district court's discretion to award fees jointly and severally is that it must do so consistently with the pre-existing background of substantive liability rules." *Id.*

First, it is clear that Velasquez is not a losing party and thus not responsible for any of the fees. Velasquez challenged Tapia's petition, and Tapia was not granted the relief she requested.

Second, the Board argues that even though it is a defendant it should not be responsible for any of the fees. The Board initially determined that Stavitsky had enough valid signatures to be placed on the ballot. Indeed, plaintiffs stated they "were not aggrieved by any action of defendant Board, inasmuch as defendant Board upheld their petition." Order to Show Cause ¶ 36. As the Board argued, it was only named as a defendant to effectu-

ate any relief that was granted. Therefore, the Board is not legally responsible for the initiation of this action, and is not responsible for the attorneys' fees accrued by the Stavitsky plaintiffs.

■ This only leaves Eyzenberg and Brook–Krasny, and appropriately so, as they the most responsible for the Stavitsky plaintiffs' need to bring this action to vindicate their constitutional rights. Eyzenberg and Brook–Krasny challenged Stavitsky's petition before the Kings County Supreme Court, and opposed her motion in this case.[1] Without their attempts to keep Stavitsky off the ballot, she would not have had to pay for the services of Kresky and Sinawski. In addition, joint and several liability is appropriate in a case such as this, "where the action ... of several defendants produces a single indivisible injury." *Koster*, 903 F.2d at 140. The joint action of Eyzenberg and Brook–Krasny to bring suit in Kings County Supreme Court resulted in Stavitsky's attorneys' fees and costs. Accordingly, Eyzenberg and Brook–Krasny are jointly and severally liable for the Stavitsky plaintiffs' attorneys' fees and costs of $6,275.

### Conclusion

For the foregoing reasons, defendants Eyzenberg and Brook–Krasny are ordered to pay the Stavitsky plaintiffs $6,275 in attorneys' fees and costs.

---

1. Only Eyzenberg challenged Stavistsky's petition before the Board, but since the Board did not try to keep Stavitsky off the ballot, that challenge did not precipitate this suit.