**Wayne TURNER, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, Defendant.**

**No. CIV. A. 98–2634(RWR/JMF)..**

United States District Court, District of Columbia.

July 24, 2001.

Arthur Barry Spitzer, Amer. Civil Liberties Union, Washington, DC, for plaintiffs.

Nancy S. Schultz, Office of Corp. Counsel, D.C., Washington, DC, Laurie Pouzzner McManus, Arlington, VA, for defendant.

Mark A. Schaefer, Mirel & Algei, Washington, DC, for DC Branch NAACP, Stand Up for Democracy Coalition, Marylanders for Democracy, amicus.

Mark T. Quinlivan, U.S. Dept. of Justice, Washington, DC, for U.S., movant.

Mark A. Schaefer, Mirel & Algei, Washington, DC, for Dist. of Columbia Chapter of Republican Nat. African–American Council, DC Democratic State Committee, D.C. Statehood Party, Gay and Lesbian Activists Alliance, Gertrude Stein Democratic Club, Greater Washington Chapter of Americans for Democratic Action, Libertarian Nat. Committee Inc., Metropolitan Washington Council, AFL–CIO, movants.

M. Miller Baker, McDermott, Will & Emery, Washington, DC, for Voting Integrity Project, Inc., movant.

## MEMORANDUM OPINION AND ORDER

FACCIOLA, United States Magistrate Judge.

## I. INTRODUCTION

This matter is before me for resolution of plaintiffs' *Motion for Attorney's Fees.* Plaintiffs, five registered D.C. voters and a committee of such voters, filed this lawsuit on October 30, 1998, seeking to have the election results from Ballot Initiative 59 on medical marijuana announced and certified by the D.C. Board of Elections and Ethics ("the Board"). The Board had refused to release the results of Initiative 59 for fear such action would violate the Barr Amendment, an enactment which denies funding to any ballot initiative aimed at legalizing or reducing penalties for the possession, use, or distribution of controlled substances. Omnibus Consolidated Appropriations Bill of 1998, Pub.L. No. 105–277, 112 Stat. 2681–150 (1998). The United States formally intervened in the lawsuit on November 30, 1998 to defend the constitutionality of the Amendment. By Order dated September 17, 1999, Judge Roberts granted plaintiffs' motion for summary judgment in part and ordered the Board to compute, certify and announce the results of the election. Neither the D.C. Board nor the United States appealed Judge Roberts' ruling. A more detailed history of this case is set forth in Judge Roberts' opinion of September 17, 1999. *See Turner, et al. v. District of Columbia Bd. of Elections and Ethics,* 77 F.Supp.2d 25 (D.D.C.1999).

Plaintiffs filed their Motion for Attorneys' Fees on March 31, 2000, seeking fees against both the D.C. Board and the United States. With respect to their fee petition against the United States, plaintiffs seek fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C.A § 2412(d)(1)(A) (1998). The United States raised several procedural objections to plaintiffs' motion, including a timeliness defense.[1] In an Order dated March 21, 2001, I determined that based on the evidence before me, I could not resolve the timeliness issue, and ordered that an evi-

---

**1.** The United States also objected to plaintiffs' fee petition on the grounds that 1) EAJA provided no basis for an award of fees in this case since this suit was not an action brought *against the United States, see* 28 U.S.C.A § 2412(d)(1)(A) (1998), and 2) pursuant to 28 U.S.C.A. § 2403(a) (1994), the federal government's liability was limited to court costs only. *Order* of March 21, 2001 at 3, 5. My Order of March 21, 2000 rejected these arguments, but left open the issue of the untimeliness of plaintiffs' fee petition against the United States.

dentiary hearing be held on the matter. *Order* of March 21, 2001, at 7–8. Accordingly, I denied plaintiffs' motion for fees without prejudice to refile. An evidentiary hearing was held on the timeliness issue on May 16, 2001.

Plaintiffs maintain that even assuming their EAJA petition was untimely, the doctrine of equitable tolling should apply here to excuse their late filing. For the reasons set forth below, the court holds that the circumstances of this case do not merit equitable tolling, and therefore plaintiffs' Motion for Attorneys' Fees against the United States will be denied.

## II. BACKGROUND

Subsequent to Judge Roberts' grant of partial summary judgment for the plaintiffs, the parties jointly drafted and submitted a proposed order to Judge Roberts' which indicated that if defendants [2] did not appeal Judge Roberts' ruling, the parties would try to resolve the fees' issue within thirty days and thereafter report to the court. *See* Transcript of May 16, 2001 Hearing at 11, 12. That proposed order was memorialized by Judge Roberts on October 8, 1999, in an Order which reads:

> Upon consideration of plaintiffs' Motion for an Order Holding in Abeyance Proceedings Regarding Attorneys' Fees and Costs, and of the defendants' consent thereto ... It is therefore, pursuant to F.R. Civ. P. 54, and Local Rule 215, hereby
>
> ORDERED, that the motion is granted and all issues relating to an award of attorneys' fees and costs shall be held in abeyance until further order of this Court; and it is further
>
> ORDERED that within 30 days of the deadline for the filing of an appeal in

this case, if no appeal is filed ... the parties shall confer with respect to issues of attorneys' fees and shall submit to the Court proposed order(s) regarding further proceedings on the fee issues.

*Order* of October 8, 1999 at 1, 2.

The expiration date for the federal government's ("government") appeal period was sixty days from the date of Judge Roberts' September 17, 1999 Order, or November 16, 1999. Fed. R.App. P. 4(a)(1). Therefore, under the abeyance Order, if the government did not appeal Judge Roberts' summary judgment ruling, the parties had thirty days from November 16, 1999 to confer and thereafter submit a proposed order to the court. *Id.* at 2. Neither the D.C. Board nor the United States appealed the summary judgment ruling.

Pursuant to 28 U.S.C.A. § 2412(d)(1)(B) (1998), a party seeking an award of fees against the United States must file its application within 30 days of final judgment in the action. § 2412(d)(1)(B). Accordingly, under EAJA, plaintiffs had until December 16, 1999, or thirty days after the government's deadline for filing an appeal, to file their application for fees. Jeff Markowitz, the Department of Justice ("DOJ") attorney representing the government at that time, testified that he was not at all familiar with the EAJA filing deadline when he agreed to the October 8, 1999 Order with plaintiffs' attorney, Graham Boyd. T. at 70, ln. 10–11. Markowitz did not recall anyone from DOJ ever calling to his attention the EAJA filing deadline. *Id.,* ln. 23. Plaintiffs' attorney Boyd did not state definitively whether he was aware of the 30–day EAJA filing deadline or not at the time Judge Roberts' Order

---

**2.** For simplification purposes only, the Court uses this term to connote both the defendant, the D.C. Board and the intervenor, the United States.

was issued.[3]  T. at 22, ln. 9–20.  Both Markowitz and Boyd have testified that neither attorney discussed any EAJA deadlines with one another at any time during their discussion of fees in this case. T. at 29, ln. 7–9; T. at 58, ln. 2.

On or about November 17, 1999, the day after the government's time to appeal had lapsed, Boyd contacted Markowitz to discuss fees.  T. at 13, ln. 2–4.  Markowitz told Boyd he could not discuss the fees' issue because he was leaving the DOJ shortly and felt it would be more productive for Boyd to take up the fees' issue with Markowitz's successor, who was yet unknown.  *Id.*, ln. 5–8.  Markowitz indicated to Boyd that he would contact Boyd when he learned who would be taking over the *Turner* case for the government.  T. at 14, ln. 13–14.

Markowitz testified that sometime subsequent to December 7, 2000, he relayed to Boyd that attorney Mark Quinlivan would be Markowitz's successor.[4]  T. at 14, ln. 21–24.  In preparation for his departure on December 15, 1999, Markowitz prepared a transfer memo, dated December 1, 1999.  T. at 55.  Quinlivan recalls receiving the transfer memo within a day or two of December 1, 1999.  T. at 76, ln. 11–17.  According to Quinlivan, the transfer memo indicated that Boyd would be making a settlement offer regarding fees by December 16, 2000.  T. at 77, ln. 20–25.  Quinlivan testified that he did not hear from Boyd at anytime during December 1999. T. at 80, ln. 3.

Although the exact date is in dispute, Boyd and Quinlivan had their first conversation about this case after Boyd learned that Quinlivan would be taking over the case for the government.  During their first conversation, which took place sometime in late December or the first part of January,[5] Quinlivan requested a formal settlement proposal from plaintiffs.  T. at 15, 16.  Quinlivan also testified that sometime in early January, Boyd referenced the parties' October 8, 1999 Order holding all fees' issues in abeyance pending settlement efforts, and Quinlivan thereafter reviewed the consent order.  T. at 87, ln. 20–25.  Quinlivan testified that the first time he focused on the relationship between the

---

3.  When asked whether Boyd recalled being aware of the EAJA filing deadline in September 1999, when Judge Roberts' opinion was issued, Boyd responded:

> My recollection is that I was aware of the number of days that we had to file.  Whether I was focusing on EAJA or the federal or local rules I'm not sure.  What I can say is that I certainly was not aware of the case law that you [the United States] ended up citing in your brief regarding the construction of the deadline under EAJA.
> Q:  Well, did you ever look at EAJA, specifically Section 2412(d)(1)(B), which provides that the petition had to be filed within 30 days of final judgement?
> Boyd:  Again, I'm not—the 30-day figure I think is one I was aware of.  I can't, thinking back to 1999, remember whether it was, you know, whether I was focusing on that or the other.

T.  at 22, ln. 6–20.

4.  Markowitz recalls that he likely told Boyd about his successor on or before December 14, 1999, as Markowitz's last day at the DOJ was December 15, 1999.  T. at 60, ln. 12–14.  Boyd testified that his best recollection was that he learned of Quinlivan's entry into the case in late December 1999 or early January 2000, T. at 15, ln. 8–9, although, he testified, it could have been before December 20, 1999. T. at 35, ln. 19–20.

5.  Quinlivan recalls having his first conversation with Boyd sometime during the second week of January 2000, T. at 80, ln. 5–8.  Boyd estimates that he learned who Markowitz's successor would be in late December or early January, though possibly before December 20, 2000.  T. at 15, 35.  According to Boyd, he called Quinlivan immediately after learning Quinlivan would be taking over the case for the government, and they talked within a day or two after that.  T. at 15, ln. 12–16.

October 8, 1999 Order and the EAJA deadline in the case was "sometime in January". T. at 87, ln. 18–25, T. at 88, ln. 1–5.

On January 21, 2000, the parties held a conference call in which plaintiffs' attorneys Graham Boyd and Arthur Spitzer, the government's attorney, Quinlivan, and a lawyer for the D.C. Board, discussed the possibility of settling the fee issue. T. at 17. The parties were unable to reach a resolution, and on February 4, 2000, they filed a report with Judge Roberts proposing a schedule for the fee petition. T. at 17–18. In drafting the proposed schedule for fees, attorney Quinlivan specifically asked for a notation which indicated that the government reserved its right to object to the timeliness of plaintiff's fee petition, although he did not specify on what grounds.[6] T. at 18, ln. 3–8; T. at 82, ln. 22–24.

Pursuant to the parties' proposed schedule, Judge Roberts issued an Order on February 14, 2000 directing plaintiffs to file their fees' motion on or before March 24, 2000. *Order* of February 14, 2000 at 1. After a subsequent extension, plaintiffs filed their fee petition on March 31, 2000, approximately three and one-half months after the EAJA deadline had run.

### III. ANALYSIS

#### A. The EAJA Filing Deadline

EAJA provides in relevant part:

A party seeking an award of fees and other expenses shall, *within thirty days of final judgment in the action,* submit to the court an application for fees and other expenses which show that the party is a prevailing party and is eligible to receive an award under this subsection, and the amounts sought. . . .

28 U.S.C.A. § 2412(d)(1)(B)(1998) (emphasis added).

Meeting this thirty-day EAJA deadline is a jurisdictional prerequisite to government liability under EAJA. *See Action on Smoking & Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 225 (D.C.Cir. 1984); *American Ass'n of Retired Persons v. EEOC,* 873 F.2d 402, 407 (D.C.Cir.1989); *Bryan v. OPM,* 165 F.3d 1315, 1321 (10th Cir.1999) ("The thirty-day time limitation is jurisdictional in nature."); *Bazalo v. West,* 150 F.3d 1380, 1383 (Fed.Cir.1998) ("We have unequivocally held that the thirty-day time limit for filing an EAJA application after final disposition of an adversary adjudication is a jurisdictional prerequisite to an award of attorney fees."); *Yang v. Shalala,* 22 F.3d 213, 215 n. 4 (9th Cir.); *Welter v. Sullivan,* 941 F.2d 674, 675 (8th Cir.1991); *Myers v. Sullivan,* 916 F.2d 659, 666 (11th Cir.1990) (same); *Taylor v. United States,* 749 F.2d 171, 174 (3d. Cir.1984) (same); *Allen v. Secretary of HHS,* 781 F.2d 92, 93 (6th Cir.1986). Because the thirty-day requirement is jurisdictional, neither the Courts nor the parties may waive it. *See Howitt v. U.S. Department of Commerce,* 897 F.2d 583, 583–84 (1st Cir.1990) ("The circuit courts have unanimously agreed that the statute's 30–day time limit is *jurisdictional,* and

---

**6.** Quinlivan recalls raising the timeliness issue the first time he and Boyd spoke about the case, which Quinlivan estimates to be the second week in January 2000. T. at 80, ln. 16–18. He testified that he also spoke with Boyd about the timeliness issue during the January 21, 2000 conference. T. at 82. During that conference, according to Quinlivan, the government told Boyd that the fee petition was untimely. *Id.* at ln. 6–7. Quinlivan recalls Boyd opposing this, mentioning the parties' consent order of October 8, 1999, and stating the parties had agreed to hold the fees' issue in abeyance. *Id.* at ln. 7–10. Quinlivan also recalls in the same conversation mentioning to Boyd that this case may not be a suit "against the United States" under 28 U.S.C.A § 2412(d)(1)(A). T. at 82, ln. 12–14.

therefore that neither they parties nor the courts may waive it.") (citing *Adam Sommerrock Holzbau, GmbH v.United States*, 866 F.2d 427, 430 (Fed.Cir.1989); *MacDonald Miller Co. v. NLRB*, 856 F.2d 1423, 1425 (9th Cir.1988); *J–I–J Construction Co. v. United States*, 829 F.2d 26, 29 (Fed.Cir.1987); *Western Newspaper Publishing Co. v. NLRB*, 821 F.2d 459, 460 (7th Cir.1987); *Sonicraft, Inc. v. NLRB*, 814 F.2d 385, 386 (7th Cir.1987); *cf. Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir.1988) (30–day time limitation in 5 U.S.C. § 504(a)(2) for filing an initial application for attorney's fees for agency proceedings under EAJA is jurisdictional); *Clifton v. Heckler*, 755 F.2d 1138, 1144–45 (5th Cir.1985) (corresponding 30–day time limitation in 28 U.S.C. § 2412(d)(1)(B) regarding initial EAJA application in civil actions is jurisdictional); *Action on Smoking & Health v. CAB*, 724 F.2d 211, 225 (D.C.Cir.1984) (same); *Columbia Mfg. Corp. v. NLRB*, 715 F.2d 1409, 1410 (9th Cir.1983) (per curiam) (5 U.S.C. § 504(a)(2) imposes jurisdictional limit); *Monark Boat Co. v. NLRB*, 708 F.2d 1322, 1326–27 (8th Cir.1983) (same)).

■ The claim of untimeliness is an affirmative defense and therefore the defendant bears the burden of pleading it. *See Bowden v. U.S.*, 106 F.3d 433, 437 (D.C.Cir.1997). However, once the defendant has met its burden, the plaintiff must then plead and prove facts which support

equitable avoidance of the result of its untimely filing. *Id.* Defendant has met its burden of untimeliness. It is undisputed that final judgment in this case was entered on November 16, 1999. Judge Robert's Order granting plaintiffs' motion for summary judgment was entered on September 17, 1999, *see Turner*, 77 F.Supp.2d at 35, and the United States' time for appeal lapsed on November 16, 1999. *See* Fed. R.App. P. 4(a)(1). Because the United States did not appeal Judge Roberts' Order, the date of final judgment for this matter was November 16, 1999. Accordingly, under 28 U.S.C.A. § 2412(d)(1)(B), the plaintiffs had until December 16, 1999 to file their fee petition.[7] Plaintiffs filed their motion for fees over three months later, on March 31, 2000.

Plaintiffs argue that principles of equitable tolling excuse their admittedly late filing. They rely upon the Supreme Court's ruling in *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), which held that equitable tolling is applicable to jurisdictional deadlines where Congress has already waived the federal government's sovereign immunity. *Plaintiffs' Reply in Support of Plaintiff's Motion for Attorney's Fees and Expense* ("Pl.Reply") at 12. Plaintiffs reason that because Congress waived sovereign immunity in enacting EAJA, EAJA's provisions are subject to the principles of equitable tolling. *Id.*

7. There is minor discrepancy between the parties' recitation of these relevant dates and the actual deadlines. In its opposition to plaintiffs' motion for fees, the United States indicates that Judge Roberts' Order granting plaintiffs' motion for summary judgment was entered on September 20, 1999. *United States' Memorandum of Law in Opposition to Plaintiff' Motion for Attorneys' Fees and Expenses* ("U.S. Memo Opp.") at 7. This date does not accord with the date of Judge Robert's published Opinion and Order, *Turner v. D.C. Board of Elections and Ethics*, 77 F.Supp.2d 25, nor with the docket sheet in this case, which both list September 17, 1999 as the date of judgment. Because the United States lists September 20, 1999 as the date of final judgment, they calculate that the time for appeal lapsed on November 19, 1999, and consequently, they claim plaintiffs' fee petition under EAJA was due on December 20, 1999. *See* U.S. Memo Opp. at 7. This Court will use the date that appears on Judge Roberts' Order and the court's docket sheet, September 17, 1999, as the starting point for its analysis.

The issue before the Court in *Irwin* was whether the plaintiff's late-filing in a Title VII suit barred the court from hearing plaintiff's claim. *Id.* at 93, 111 S.Ct. 453. The Court held that it did not, and in so doing, stated that the case "affords us an opportunity to adopt a more general rule" regarding the applicability of equitable tolling in cases against the federal government. *Id.* at 95, 111 S.Ct. 453. The Court concluded that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States ...." *id.* at 95, 96, 111 S.Ct. 453, thereby specifically rejecting its past ad hoc approach to these cases, which had the "disadvantage of continuing unpredictability." *Id.* at 95, 111 S.Ct. 453.

Prior to *Irwin*, the D.C. Circuit, as discussed above, held that EAJA's filing deadline was jurisdictional and could not be waived. *See, e.g., Action on Smoking,* 724 F.2d at 225. After *Irwin*, both the Supreme Court and this Circuit have been silent as to whether EAJA is subject to equitable tolling.[8] The Court need not decide that issue today. Even assuming the § 2412(d)(1)(B) filing deadline is subject to equitable tolling, the circumstances of this case do not warrant its application.

## B. Analysis of Equitable Tolling

■ Equitable tolling can apply in several circumstances. In *Irwin*, the Supreme Court noted that equitable tolling applies in situations "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period" or where he has been "induced or tricked by his adversary's mis-conduct into allowing the filing deadline to pass." *Irwin* at 96, 111 S.Ct. 453. This Circuit has indicated that equitable tolling is appropriate where

"a claimant has received inadequate notice, ... where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, ... where the court has led the plaintiff to believe that she had done everything required of her, ... [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction."

*Bull, S.A. v. Comer,* 55 F.3d 678, 681 (D.C.Cir.1995) (citing *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir. 1988)) (quoting *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam)). Further, a plaintiff's justifiable reliance on the advice of a governmental official may also excuse the plaintiff's failure to meet a filing deadline. *See Bull, S.A.* at 681 (quoting *Jarrell v. United States Postal Service,* 753 F.2d 1088, 1092 (D.C.Cir. 1985)). Nonetheless, equitable tolling is only available in "extraordinary and carefully circumscribed instances," *Smith–Haynie v. District of Columbia,* 155 F.3d 575, 579–80 (D.C.Cir.1998), and courts have been unwilling to apply it to "a garden variety claim of excusable neglect." *Washington v. WMATA,* 160 F.3d 750, 753 (quoting *Irwin,* 498 U.S. at 96, 111 S.Ct. 453).

Plaintiffs do not assert, nor could they make the claim, that they "actively pursued" their judicial remedies by "filing a defective pleading during the statutory period." Plaintiffs made no filing in this case

---

8. Two post-*Irwin* cases in this Circuit give, at best, uncertain guidance. See *Scott v. National Transportation Safety Board,* 114 F.3d 305 (D.C.Cir.1997) (EAJA deadline jurisdictional but no discussion of equitable tolling); *Washington v. Washington Metropolitan Area Transit Authority,* 160 F.3d 750 (D.C.Cir. 1998), *cert. denied,* 527 U.S. 1038, 119 S.Ct. 2399, 144 L.Ed.2d 798 (1999) (applying equitable tolling to Title VII deadline).

until March 31, 2000, approximately three and one-half months after the EAJA deadline had passed. Furthermore, plaintiffs have shown no affirmative wrongdoing on the part of defendants. Indeed, plaintiffs conceded at the evidentiary hearing on this matter that the defendants have engaged in no affirmative misconduct or trickery that would justify equitable tolling. T. at 92, ln. 12–19; T. at 29, ln. 23.

■ Instead, plaintiffs contend that equitable tolling should apply because the government induced plaintiffs to allow the EAJA deadline to pass when the government agreed to a consent order holding all fees issues in abeyance while the parties tried to settle the fees' claim, and then subsequently pursued an untimeliness defense after the EAJA deadline had passed. Pl. Reply at 12–13. Courts may excuse late filing when the plaintiff was misled by their adversary's actions about the running of the filing period, *see Bowden v. United States,* 106 F.3d 433, 438 (D.C.Cir.1997), or induced by their adversary's misconduct into allowing the deadline to pass. *Irwin* at 96, fn. 4, 111 S.Ct. 453 (citing *Glus v. Brooklyn Eastern Terminal* (adversary' misrepresentation caused plaintiff to allow filing deadline to lapse; *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (same))).

■ Plaintiffs here were not induced or misled by defendant's conduct. Both the pleadings before me and the testimony presented at the hearing indicate that the parties mutually agreed to hold all fees' issues in abeyance pending settlement discussion. The parties did so without ever discussing the EAJA deadline. T. at 29, ln. 7–9; T. at 58, ln. 2. Further, the government at no time represented to plaintiffs that the EAJA deadline would be waived. Indeed, government attorney Markowitz testified that he not even aware of the EAJA deadline. T. at 70, ln. 10–11.

Given that the government's attorney was unaware of the EAJA deadline when he agreed with plaintiffs' attorney to hold fees' issues in abeyance, and made no representations whatsoever as to EAJA, I cannot reach the conclusion that defendants somehow induced or lulled plaintiffs into missing the deadline.

Furthermore, while Markowitz's successor, Quinlivan, testified that he was familiar with EAJA and its filing deadlines, T. at 80, he also testified that he did not focus on the relationship between the parties' October 8, 1999 consent order and the applicable EAJA deadline until early January 2000. T. at 87, ln. 18–25. Had Quinlivan been simultaneously aware of the consent agreement and the approaching EAJA deadline, plaintiffs may have a case for misconduct or a misleading of plaintiffs into missing the deadline, because this would show that the government allowed the deadline to pass knowing that the parties agreed to hold all issues with respect to fees in abeyance while they tried to settle the matter. However, plaintiffs offered no evidence to refute Quinlivan's testimony, or to suggest that Quinlivan was aware of the consent agreement between the parties prior to the time the EAJA deadline passed. Therefore, on the evidence before me, I cannot agree with plaintiffs' assertion that the government misled plaintiffs into missing the EAJA deadline.

Plaintiffs also contend that equitable tolling is appropriate here because they reasonably relied on the advice of a government official. *Plaintiff's Reply in Support of Their Renewed Motion for Attorneys' Fees and Expenses* at 4. In support of this argument, plaintiffs cite to *Jarrell v. United States Postal Service,* 753 F.2d 1088 (D.C.Cir.1985), which held that a filing deadline may be excused where a *pro se* claimant failed to contact an EEO coun-

selor in a timely manner because the claimant relied on the assurances of an EEO officer that the officer was attempting to have certain information expunged from the claimant's records. *Id.* at1092. Plaintiffs' case, however, is readily distinguishable.

Unlike the claimant in *Jarrell,* plaintiffs here were not proceeding *pro se,* but were instead represented in the fees' negotiations by a nationally-renowned legal organization, the ACLU. Significantly, plaintiffs were represented by the ACLU when plaintiffs and the government jointly agreed to hold all fees issues in abeyance. The ACLU continued to try to negotiate a settlement on behalf of the plaintiffs throughout the relevant period. In contrast with the claimant in *Jarrell,* the plaintiffs here, represented at all times by counsel, cannot claim their lateness in filing was justifiable. The ACLU has a distinguished history of engaging in the most significant civil rights and civil liberties litigation in American history. *See www. aclu.org/library/Freedomls.Why.pdf.* It routinely engages in litigation against the United States government, and its attorneys should have known, or made themselves aware, of the appropriate filing deadlines under EAJA, irrespective of any agreement entered into by the ACLU and the government attorneys. *Cf. Battle v. Rubin,* 121 F.Supp.2d 4, 9 (D.D.C.2000). The Supreme Court has "generally been much less forgiving in receiving late filings where claimant failed to exercise due diligence in preserving his legal rights." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453.

In sum, I conclude that the circumstances of this case do not warrant equitable tolling. I reach this result with some regret; disposition on the merits is always preferable to a procedural default. Nevertheless, if one construes Boyd's equivocal testimony, *see* n. 4 *supra,* in ACLU's favor, its best case is that its attorney (Boyd) and the government's attorney (Markowtiz) were mutually ignorant of a jurisdictional deadline when they agreed to postpone Judge Roberts's consideration of the a petition pending the parties' attempt to negotiate fees. At the risk of patronizing them, one has to say that those lawyers ought to know that deadlines, inexorable and sometimes devastating to their clients' interests, are a litigating lawyer's life and she ignores them at her peril. To excuse the ACLU's failure to learn of the EAJA deadline because government's counsel was equally ignorant of it is unprecedented, unsanctioned by any legal authority, and a contortion of the history and purpose of the concept of "equitable tolling." Mutual ignorance of a deadline by the government and its opponent cannot invoke a principle designed to prevent government sharp dealing and to permit justified reliance on the statements of government officials which could lead a reasonable person to believe that a deadline is being waived or does not apply until another event occurs.

It must also not be forgotten that EAJA is a waiver of sovereign immunity which must be construed strictly in favor of the sovereign. *In re Sealed Case,* (D.C.Cir. 2001). To excuse the ACLU's failure to meet a jurisdictional deadline because its attorneys were as ignorant of it as the government is to violate that principle in the most obvious way. It would be hard to imagine a more generous construction of that waiver of sovereign immunity than to waive it because a lawyer was ignorant of it.

## IV. CONCLUSION

Accordingly, this court will deny plaintiffs' Renewed Motion for Attorneys' Fees as to the United States. An Order will be issued accompanying this Memorandum

Opinion which will deny plaintiffs' motion for fees against the United States.

The ACLU also seeks fees against defendant D.C. Board of Elections. It is the ACLU's position that the United States and the D.C. Board share joint and several liability for "expenses and for fees up to the amount compensable under EAJA". *Plaintiffs' Motion for Attorneys' Fees and Expenses* ("Pl.Mot.") at 23. As plaintiffs state: "Here, the shared liability should apply to plaintiffs' expenses and to the amount of fees awarded under EAJA. The D.C. defendants should be solely liable for any amount of fees awarded under § 1988 that exceeds the amount awarded under EAJA." Pl. Mot. at 23–24. Obviously, my determination today denying any award of fees against the United States may substantially impact plaintiffs' position on fees vis-a-vis the D.C. Board. Therefore, in fairness to the parties, I will grant the ACLU and the D.C. Board the opportunity to address the validity of any recovery of fees against the D.C. Board in light of my determination. Accordingly, I will permit the ACLU to file, within fourteen (14) days of the date of this Order, a statement which addresses whether, in light of the determination denying fees as to the United States, an award of fees against the D.C. Board is valid. The D.C. Board shall have fourteen (14) days thereafter to respond, and the ACLU seven (7) days thereafter to file a reply.

## ORDER

This matter if before me for resolution of plaintiffs' Motion for Attorney's Fees against the defendant, the D.C. Board, and the intervenor, the United States. Accoringly, it is hereby

**ORDERED** that plaintiffs; Renewed Motion for Attorneys' Feed [#61] is **denied** as to the United States. It is further hereby

**ORDERED** that, pursuant to the Memorandum Opinion accompanying this Order, plaintiffs shall file a statement within fourteen (14) days of the date of this Order addressing the validity of any fees' award against the D.C. Board in light of the determination denying fees against the United States. The D.C. Board shall have fourteen (14) days thereafter to file a response, and plaintiffs shall have seven (7) days thereafter to file a reply.

**SO ORDERED.**