Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 21, 2003      Decided January 23, 2004

No. 03-7030

WAYNE TURNER, ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 98cv02634)

———

*Arthur B. Spitzer* argued the cause for appellants. With him on the briefs was *Graham A. Boyd*.

*William K. Shirey II* argued the cause for appellee. With him on the brief were *Edward E. Schwab*, Assistant Corporation Counsel, *Donna M. Murasky*, Senior Litigation Counsel, *Glen D. Nager* and *Jennifer L. Merzon*.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal requires the court to determine what is a fully compensatory award under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, where the original defendant, aligning with the plaintiffs' constitutional challenge to a federal statute under 42 U.S.C. § 1983, leaves defense of the statute to the United States, as defendant-intervenor. The district court apportioned the requested § 1988 attorney's fees and expenses between the original defendant and the immune defendant based on considerations of comparative fault. In doing so, the district court approved a partial award to the prevailing plaintiffs only for the time prior to the original defendant's alignment with the plaintiffs' position, and no fees and expenses for the merits litigation thereafter. The district court also limited the award for the litigation to collect fees and expenses to the plaintiffs' efforts to collect under § 1988, excluding fees and expenses arising from efforts to collect from the immune defendant under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). On appeal, the prevailing plaintiffs contend that they were entitled to a "fully compensatory fee," *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), in light of their complete success on the merits, notwithstanding the original defendant's failure to oppose their lawsuit. We agree. The original defendant continued to deny the plaintiffs the only relief they sought throughout the litigation, and was jointly and severally liable with the United States for fees and expenses on the non-fractionable claims. Accordingly, we hold that the district court erred as a matter of law in apportioning fees and expenses on non-fractionable claims in the § 1983 litigation, and we vacate the judgment and remand the case to the district court to enter a fully compensatory award to the prevailing plaintiffs.

## I.

A brief recitation of the underlying lawsuit giving rise to the request for attorney's fees is necessary. *See Turner v.*

*D.C. Bd. of Elections & Ethics*, 77 F. Supp. 2d 25 (D.D.C. 1999). When District of Columbia voters went to the polls on November 3, 1998, the ballot included Initiative 59, the Medical Marijuana Initiative, which sought voters' approval to legalize medical uses of marijuana for the chronically ill. *Id.* at 27. Two weeks before the election, on October 21, 1998, Congress enacted and the President signed the Barr Amendment to the District of Columbia Appropriations Act for Fiscal Year 1999. *See* Pub. L. No. 105–277, § 171, 112 Stat. 2681–150 (1998). The Barr Amendment prohibited use of the appropriated funds to "conduct any ballot initiative which seeks to legalize or otherwise reduce penalties associated with" a controlled substance. *Id.* The ballots for the November 3 election had been printed before enactment of the Barr Amendment, however, and District of Columbia voters voted on Initiative 59. *Turner*, 77 F. Supp. 2d at 27.

When the Board of Elections and Ethics refused, in light of the Barr Amendment, to release and certify the results of the vote on Initiative 59, five District of Columbia voters, including Wayne Turner, the official sponsor of Initiative 59 (hereinafter, together, "Turner"), sued the Board under 42 U.S.C. § 1983, seeking declaratory and injunctive relief. The complaint, filed October 30, 1998, and Turner's subsequent briefing alleged in the alternative that first, the Barr Amendment only limited the Board's capability to act until November 3, Election Day, and, therefore, the Board was required under D.C. Code Ann. § 1–1306 (1981) (now codified at D.C. Code Ann. § 1–1001.05 (2001)) to certify the results thereafter, *see Turner*, 77 F. Supp. 2d at 27, and second, to the extent the Barr Amendment prohibited the Board from performing its duty, the Amendment violated the First and Fifth Amendments of the United States Constitution. Three days after the election, Turner filed a motion for a temporary restraining order ("TRO") and a preliminary injunction. The same day, November 6, the Board filed a motion for a declaratory judgment supporting Turner's argument that the Barr Amendment was unconstitutional; the Board did not join the statutory argument.

The United States, having been notified of the lawsuit pursuant to 28 U.S.C. § 2403(a), filed an opposition to the TRO on November 9, pending a decision by the Solicitor General as to whether the United States would seek to intervene. The district court denied the TRO on November 10 and consolidated the preliminary injunction with the merits. The United States' unopposed motion to intervene, filed November 23, was granted on November 30. Following a hearing on the parties' cross-motions for summary judgment, the district court, on September 17, 1999, granted summary judgment to Turner, adopting his statutory argument in light of the principle of constitutional avoidance, for otherwise, the court opined, the Barr Amendment would have violated Turner's First Amendment rights. *Turner*, 77 F. Supp. 2d at 35. Neither the United States nor the Board appealed. Shortly thereafter, the Board counted the ballots and certified the results, which indicated that Initiative 59 had passed by 69% of the vote. *See* District of Columbia Board of Elections and Ethics, November 3, 1998 General Election, Election Results, Initiative Measure #59 (votes counted Sept. 20, 2003), *at* http://www.dcboee.org/information/elec_1998/ini59_98.htm.

On March 31, 2000, after fee negotiations had proved unsuccessful, *see* Local Rule 215(b), Turner filed a motion for attorney's fees and expenses of approximately $134,000. Asserting that the Board and the United States were jointly and severally liable, Turner sought fees from the United States under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), and, in light of EAJA's statutory cap on hourly rates, *see id.* § 2412(d)(2)(A), also sought fees from the Board under 42 U.S.C. § 1988 for any amount exceeding the award under EAJA. A magistrate judge dismissed the EAJA request as untimely, *see* 28 U.S.C. § 2412(d)(1)(B), a determination to which Turner did not object, but permitted Turner to amend his motion to request an award of all of his attorney's fees and expenses from the Board. *Turner v. District of Columbia Bd. of Elections & Ethics*, 183 F. Supp. 2d 22, 30–31 (D.D.C. 2001).

Addressing Turner's § 1988 request, the magistrate judge, *see* Fed. R. Civ. P. 54(d)(2)(D) & 72(b), found that Turner was

a prevailing party and did not question the reasonableness of his counsel's hours and rates. The magistrate rejected, however, the view that the Board and the United States could be jointly and severally liable for Turner's attorney's fees and therefore apportioned fees and expenses based on comparative fault. *Turner v. District of Columbia Bd. of Elections & Ethics*, 170 F. Supp. 2d 1, 4–7 (D.D.C. 2001). The magistrate concluded that Turner was entitled to recover only $2,616 in fees for the period between October 30, 1998, when Turner filed his complaint, and November 6, 1998, when the Board filed its motion for a declaratory judgment ("pre-alignment period"). *Id.* at 8. For the pre-alignment period, the magistrate apportioned 90% of the culpability for the merits litigation to the United States inasmuch as the Board's decision to enforce the Barr Amendment was, in view of the District of Columbia's unique relationship with Congress, understandable. *Id.* at 7, 8. For the post-November 6 merits litigation ("post-alignment period"), the magistrate apportioned 100% of the culpability for that litigation to the United States. The magistrate reasoned that it was unfair to force the Board to pay attorney's fees and expenses for this period when Turner and the Board sought the same relief and Turner's counsel's work was directed against arguments presented only by the United States. *Id.* at 6. Finally, the magistrate awarded Turner fees of only $1,497 incurred in litigating the request for fees ("fees-for-fees"). *Id.* at 9. Because Turner had not allocated his counsel's time between the EAJA and § 1988 claims, the magistrate used the number of pages in Turner's fee motions directed at each claim as a proxy for allocating the fees-for-fees to the United States and to the Board, finding that only 46% of Turner's counsel's fees work could be ascribed to the Board. *Id.* The magistrate again, however, in light of his culpability finding, awarded Turner only 10% of the fees-for-fees incurred against the Board. *Id.* at 9. Turner, but not the Board, filed objections to the magistrate's partial award.

On *de novo* review, *see* Fed. R. Civ. P. 54(d)(2)(D) & 72(b), 28 U.S.C. § 636(b)(1), the district court adopted the magistrate's comparative-fault apportionment but increased Tur-

ner's partial award against the Board to $39,815. The district court concluded, in recognition of § 1988's purpose of encouraging private attorneys general to bring meritorious lawsuits to vindicate citizens' rights, that the reasonable amount of fees should be reduced only minimally. The district court awarded Turner 87% of his fees request ($24,000) for the pre-alignment period plus expenses of $569. The district court denied Turner any award for the post-alignment period for the remainder of the merits litigation. For the fees-for-fees period, the district court awarded Turner 46% of his request, or $15,246, based on the pages proxy, absent a complete allocation by Turner of time between the § 1988 and EAJA claims, but with no reduction for comparative fault. Upon reconsideration, the district court awarded Turner $21,714 for fees-for-fees work following the magistrate's decision, bringing the total partial award to $61,529.

## II.

On appeal, Turner contends that the district court erred as a matter of law in awarding only a portion of his request for attorney's fees and expenses under § 1988 based on apportioning most of the fees to an immune defendant. Because the Board did not object either to his status as a prevailing party or to the reasonableness of his counsel's rates or hours, and did not cross-appeal on these issues, Turner maintains, and we agree, that there are no disputed issues of fact before this court. Thus, the only question before the court is for which parts of Turner's § 1983 lawsuit the Board may properly be held accountable for attorney's fees and expenses, and whether joint and several liability applies.

Longstanding precedents establish that plaintiffs who have achieved excellent results in civil rights litigation should normally receive a fully compensatory attorney's fee. Section 1988 provides in pertinent part that in any suit pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The plaintiff, however, bears the burden of establishing both

entitlement to an award of attorney's fees as well as the amount properly due. *Hensley*, 461 U.S. at 437; *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). The Supreme Court has described § 1988's purpose as safe-guarding "effective access to the judicial process" for persons with civil rights grievances such that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (quoting H. R. Rep. No. 94–1558, at 1 (1976); S. Rep. No. 94–1011, at 4 (1976)). In order to attract competent counsel to serve as private attorneys general on behalf of plaintiffs, who are "the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority," *Miller v. Staats*, 706 F.2d 336, 340 (D.C. Cir. 1983) (citations omitted), it has long been established that "[i]n computing the [§ 1988] fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" *Hensley*, 461 U.S. at 430 n.4 (quoting S. Rep. No. 94–1011, at 6 (1976)). Thus, § 1988 "grants the successful civil rights plaintiff a 'fully compensatory fee.'" *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (quoting *Hensley*, 461 U.S. at 435); *see also Covington*, 57 F.3d at 1109.

Although "a request for attorney's fees should not result in a second major litigation," and "the district court has discretion in determining the *amount* of a fee award" because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters," *Hensley*, 461 U.S. at 437 (emphasis added), "[i]t is now axiomatic that . . . the discretion of a district court in deciding *whether* to award such fees to a prevailing party is narrowly limited." *Consumers Union of U.S., Inc. v. Virginia State Bar*, 688 F.2d 218, 222 (4th Cir. 1982) (citing *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979)) (emphasis added); *accord Miller*, 706 F.2d at 340. Where, as here, the issues involved are not questions of fact but of law regarding the appropriateness of apportionment, this court's review is *de novo*. *See Jacobs v. Schiffer*, 204 F.3d 259, 264 (D.C. Cir. 2000).

This court normally would defer to a thoughtful rationale of the district court so long as it achieved a result that was fair to the parties, *see Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000), but we are constrained to take a closer look at this § 1988 fees appeal in light of the novel application of a comparative fault theory based on tort law, *see Turner*, 170 F. Supp. 2d at 5–6 (citing Restatement (Second) of Torts § 192). Here, the district court, in adopting the magistrate's analysis, *see id.* at 6–9, applied its view of comparative fault in the sense that the Barr Amendment placed the Board in a difficult position of either having to enforce the Amendment or risk defying Congress to which it is ultimately responsible, *see* U.S. Const. art. I, § 8, cl. 17, and which controls its appropriations, *see* D.C. Code § 1–204.46. The district court concluded that a reasonable fee must take into account the fact that the United States was primarily at fault. In developing this comparative fault theory, the magistrate and the district court relied on *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 960 (1st Cir. 1984), in which the First Circuit suggested relevant factors for allocating fees among defendants. While a source of guidance for jointly and severally liable defendants, *Grendel's Den* provides no support for apportioning § 1988 fees liability so as to deny the prevailing plaintiff a fully compensatory fee on a common set of claims against the defendants. *Id.* Indeed, the First Circuit, in citing its own authority, among others, recognized that it was not unjust to assess fees against a governmental entity stuck with enforcing a law ultimately found to be unconstitutional on its face even where it did not enact the law and where some other entity may be more culpable or causally responsible. *Id.* (citing *Venuti v. Riordan*, 702 F.2d 6, 8 (1st Cir. 1983)).

Turner contends that the district court abused its discretion, *see Jacobs*, 204 F.3d at 264; *Nat'l Black Police Ass'n v. D.C. Bd. of Elections & Ethics*, 168 F.3d 525, 529 (D.C. Cir. 1999), by failing to award him a "fully compensatory award" where there are no "special circumstances [that] would render such an award unjust." *Hensley*, 461 U.S. at 435, 429. Specifically, Turner maintains that for the pre-alignment

period the district court erred as a matter of law in denying his full fees even though the Board was the only defendant. For the post-alignment period, Turner contends that the Board, notwithstanding its alignment with his constitutional challenge, continued to be his adversary throughout the merits litigation because, although it could have settled in light of its position that the Barr Amendment was unconstitutional, it continued to enforce the Amendment, denying Turner his sought relief. Moreover, while acknowledging that for the fees-for-fees period he seeks to recover against the Board only the fees that are attributable to his efforts under § 1988 and not for time devoted to EAJA collection from the United States, Turner contends that there is no authority to apportion § 1988 fees and expenses when the result is, as here, to deny a successful plaintiff any fees for his attorneys' work on the merits, other than a fractional fee for the first week after the complaint was filed. By so doing, Turner maintains the district court's fee award undermines "the premium that the Civil Rights Act places on litigants as private attorneys general," *Boos v. Barry*, 704 F. Supp. 5, 9 (D.D.C. 1989), by enabling ordinary citizens to obtain counsel to litigate meritorious civil rights cases.

Although the Board attempts for the first time on appeal to contend that it, too, was a prevailing party, that argument is not properly before the court. *See United States v. Hylton*, 294 F.3d 130, 135 (D.C. Cir. 2002). There is no basis to conclude that the Board was not "the party legally responsible for relief on the merits," *Kentucky v. Graham*, 473 U.S. 159, 164 (1985), as only it, and not the United States, could certify the votes on Initiative 59. Results, not litigating positions, are determinative of prevailing party status. *Hensley*, 461 U.S. at 435. Turner incurred and continued to incur attorney's fees and expenses because the Board refused to certify the election results. *See Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 710 (D.C. Cir. 1977) (citing *Communist Party of U.S. v. Department of Justice*, No. 75–1770, slip op. at 3 (D.D.C. Mar. 23, 1976)); *see also Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977), *overruled on other grounds by Burka v. United States Dept.*

*of Health and Human Services*, 142 F.3d 1286, 1288 (D.C. Cir. 1998). Hence, the Board's claim of "alignment" with Turner in challenging the Barr Amendment fails to show exceptional circumstances to excuse its failure to raise this argument in the district court. *See Hylton*, 294 F.3d at 135.

Our analysis of Turner's § 1988 request proceeds on the basis of four well-settled propositions of law on which Turner relies. First, because an award of attorney's fees under § 1988 "is not meant as a 'punishment' for 'bad' defendants who resist plaintiffs' claims in bad faith[,] [but] is meant to compensate civil rights attorneys who bring civil rights cases and win them," *Coalition for Basic Human Needs v. King*, 691 F.2d 597, 602 (1st Cir. 1982), the fact that it was not the "fault" of the Board of Elections that the Barr Amendment was enacted by Congress and that Turner had to litigate to get the Board to count the votes on Initiative 59 is not a "special circumstance" warranting denial of a fully compensatory fee. Second, it is irrelevant for purposes of § 1988 that Congress, and not the Council of the District of Columbia, enacted the Barr Amendment, because under 42 U.S.C. § 1983 the Amendment is treated as a District of Columbia law. Third, in light of *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 739 (1980), and *King*, 691 F.2d at 602, because the Board continued to enforce the Barr Amendment throughout Turner's § 1983 litigation, it is irrelevant for purposes of § 1988 that in court the Board supported Turner's constitutional challenge to the Barr Amendment. Fourth, because the Board's liability for § 1988 fees is not derivative of the United States', it is irrelevant that Turner did not timely seek attorney's fees under EAJA, for the immunity of one defendant does not reduce the liability of a non-immune co-defendant. *See Graham*, 473 U.S. at 164–65; *Supreme Court of Va.*, 446 U.S. at 739.

To ensure that a private attorney general is fully compensated, "[i]t is frequently appropriate to hold all defendants jointly and severally liable for attorneys' fees in cases in which two or more defendants actively participated in a constitutional violation." *Herbst v. Ryan*, 90 F.3d 1300, 1305

(7th Cir. 1996) (citing *Koster v. Perales*, 903 F.2d 131, 138 (2d Cir. 1990)). Moreover, in order to serve the remedial purposes of the Civil Rights Act, "a number of courts have upheld the imposition of joint and several liability for a fee award where there existed a question as to whether the fee would be collectible from one of the defendants." 90 F.3d at 1306 n.13; *see also Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 285–86 (3d Cir. 1983); *Riddell v. Nat'l Democratic Party*, 712 F.2d 165, 168–169 (5th Cir. 1983). Thus, in this circuit, a plaintiff's fully compensatory fee for claims "centered on a set of common issues" against two or more jointly responsible defendants should be assessed jointly and severally. *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 216 (D.C. Cir. 1984) (hereinafter "*ASH*"). On the other hand, if claims are not attributable to all defendants and are not "centered on a set of common issues," i.e., claims that are "truly fractionable," *id.*, fees should be apportioned, "in order to ensure that a defendant is not liable for a fee award greater than the actual fees incurred against that defendant," *Jones v. Espy*, 10 F.3d 690, 691 (9th Cir. 1993).

The Supreme Court has acknowledged that "[f]ee awards against enforcement officials are run-of-the mill occurrences." *Supreme Court of Va.*, 466 U.S. at 739. "Mere" enforcers of unconstitutional laws may be held liable for attorneys' fees even if their involvement in the litigation has been minor or they have argued that their enforcement actions are improper and have lobbied for the underlying law to be changed. *See id.*; *cf. Carhart v. Stenberg*, 192 F.3d 1142, 1152 (8th Cir. 1999), *aff'd*, 530 U.S. 914 (2000). Congress has determined that the greater wrong would be to leave unpaid the attorney's fees and expenses of a successful § 1983 plaintiff who has undertaken significant risks and expenses to vindicate constitutional rights. *See Carhart*, 192 F.3d at 1152. As this court observed, "the determinative factor must be the role of plaintiffs' lawsuit, not the motivations of the defendant." *Miller*, 706 F.2d at 343.

Section 1988 does not permit a court to inquire into defendants' comparative fault where to do so obstructs Congress'

purpose of compensating successful private attorneys general. *King*, 691 F.2d at 602. Even accepting the district court's view that the Board's blameworthiness was relatively slight compared to that of the United States, the Board's § 1988 liability may not, to the prevailing plaintiffs' detriment, be reduced on the non-fractionable claims against the defendants. State actors "may have had good-faith reasons for their acts, but that is no reason to deny the [plaintiff] attorney's fees." *Id.* The district court's reservations about holding District of Columbia officials fully responsible for their enforcement of the Barr Amendment are therefore misplaced. The unique relationship between Congress and the District of Columbia under the Constitution simply means that there will be occasions when the District of Columbia government must pay attorney's fees for successful § 1983 lawsuits challenging laws that the District Government did not enact, for any Act of Congress that is solely applicable to the District of Columbia is a law of the District of Columbia for § 1983 purposes. Consistent with the court's duty to ensure that a successful § 1983 plaintiff is awarded a fully compensatory fee, then, § 1988 fee awards based on a non-fractionable claim may not be apportioned between an immune "losing party," *see Graham*, 473 U.S. at 164, who cannot be made to pay, and a non-immune losing party that is jointly and severally liable for the former's share of an attorney's fee award.

As previously explained, joint and several liability exists for all defendants on the non-fractionable claims, *see Herbst*, 90 F.3d at 1305; it is only when there are fractionable parts of a lawsuit not fairly attributable to other parties that liability for attorney's fees and expenses may be apportioned exclusively to the party who caused the plaintiff to incur those costs, *see ASH*, 724 F.2d at 216. Turner's § 1983 lawsuit to obtain a preliminary injunction and declaratory judgment against the Board and, once it intervened, against the United States centered on a common set of issues: namely, the Board's refusal to count and certify the votes on Initiative 59. While the United States' intervention as a defendant affected the course of the proceedings, there was not a separate claim

against the United States, *compare Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125 (9th Cir. 1981); *Jones*, 10 F.3d at 692 n.2, as is clear from the fact that if the United States had not intervened, Turner would have been required to litigate the merits of his § 1983 claim so long as the Board continued to enforce the Barr Amendment. The magistrate's finding, adopted by the district court, stated there is nothing to indicate that, but for the United States' intervention, the Board would have unilaterally stopped enforcing the Amendment. *See Turner*, 170 F. Supp. 2d at 7. Because the United States enjoys sovereign immunity over the share of Turner's fees it otherwise would bear, the Board, as a jointly and severally liable losing party, must pay all attorney's fees associated with the non-fractionable claim, here consisting of the entire litigation from the date Turner filed his complaint to the date he obtained summary judgment.

By contrast, as Turner acknowledges, his fees-for-fees litigation is fractionable. Because it involves distinct claims, i.e., different statutes with different standards of proof, Turner correctly seeks only to recover fees-for-fees from the Board based on his § 1988 claim against the Board and not based on his EAJA claim against the United States. *Compare* 42 U.S.C. § 1988(b) *with* 28 U.S.C. § 2412(d)(1)(A). For the fees-for-fees litigation, Turner's counsel engaged in separate research on each statute and generated a separate argument about how each party's role in the suit rendered it liable to a prevailing party's claim for attorney's fees. *See Turner*, 170 F. Supp. 2d at 9. His counsel's hours therefore can be "easily compartmentalized," *ASH*, 724 F.2d at 216, preventing Turner from recovering fees-for-fees against the Board for his EAJA claim.

We therefore hold that the district court (and the magistrate judge) erred as a matter of law by using considerations of comparative fault in apportioning Turner's § 1988 request for attorney's fees and expenses on a non-fractionable claim between the non-immune Board and the immune United States. Because there is no issue regarding the reasonableness of his counsel's hours and rates, Turner was entitled to recover 100% of the fees and expenses incurred for the merits

litigation. In the pre-alignment period, the United States was not a party and hence there was no basis for limiting Turner's recovery to 87%. In the post-alignment period, the Board continued to enforce the Barr Amendment, denying Turner the sole relief that he sought in his litigation; the Board neither certified the results nor settled the case. By contrast, Turner's claims for fees-for-fees under § 1988 and EAJA are fractionable, and the district court, using motions pages as a proxy for any other allocation, properly apportioned the fees between the Board and the United States. Accordingly, we vacate so much of the order as awarded Turner only a partial award of his attorney's fees and expenses under § 1988 for the § 1983 merits litigation, and remand the case to the district court to enter a fully compensatory award.