*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0020p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

HORSEMAN'S BENEVOLENT & PROTECTIVE
ASSOCIATION - OHIO DIVISION, INC.,
              *Plaintiff-Appellee,*

        *v.*

MIKE DEWINE,
                    *Defendant,*

TED BROWN; THOMAS M. ZAINO; JERRY
CHABLER; GERALD O. HOLLAND, Members of
the Ohio State Racing Commission; WILLIAM
KOESTER, Chairman of the Ohio State Racing
Commission,
              *Defendants-Appellants*,

HEARTLAND JOCKEY CLUB, LTD., dba Beulah
Park Racetrack; RIVER DOWNS TURF CLUB,
INC. and RIVER DOWNS JOCKEY CLUB, INC.,
dba River Downs Racetrack; CHESTER
DOWNS AND MARINA, LLC, dba Harrah's
Chester Casino & Racetrack,
              *Defendants-Appellees*.

> No. 10-3511

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 07-00057—Michael H. Watson, District Judge.

Decided and Filed:  January 24, 2012

Before:  SUTTON and WHITE, Circuit Judges; STAFFORD, District Judge.[*]

_____

[*] The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

———————————

**COUNSEL**

**ON BRIEF:**  Jason Patrick Small, ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellants. Douglas L. McSwain, Andrew DeSimone, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, Robert G. Cohen, KEGLER, BROWN, HILL & RITTER CO., L.P.A., Columbus, Ohio, for Appellees.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.  Many residents of this circuit live in close proximity to some of the country's finest racetracks.  For those who are not so lucky (and like horse racing), the racing industry has devised the next best thing:  off-track betting. Both the Federal Government and the State of Ohio regulate the pastime.  The Horseman's Benevolent & Protective Association argues that federal law preempts part of an Ohio statute because the two laws directly conflict.  We agree and as a result affirm the judgment of the district court.

I.

There are three sets of parties to this dispute.  First is the plaintiff, the Horseman's Benevolent & Protective Association, a group that represents racehorse owners and trainers.  Second are the racetrack defendants: the Heartland Jockey Club (which operates the Beulah Park racetrack in Grove City, Ohio) and the River Downs Turf Club and River Downs Jockey Club (which together operate a racetrack in Cincinnati).  Third are the State defendants: the Ohio State Racing Commission, which regulates horse racing, and various state officials.

In July 1986, the Association signed an agreement with Beulah Park governing racing operations there.  Six years later, they amended the agreement to provide for a "regular contractual process" in which the Association periodically would grant or withhold consent to simulcast Beulah Park races to betting facilities outside of Ohio.

R.3 ¶ 29. In April 1996, the Association executed a similar agreement with River Downs, including a provision that established a similar process for allowing off-track wagering. Under these agreements, when Beulah Park and River Downs want to simulcast races to out-of-state betting facilities, they send a letter to the Association outlining the terms of the proposed simulcast and requesting authorization. The Association then decides whether to consent.

In October 2006, Beulah Park and River Downs asked the Association to authorize an off-track wagering agreement with several out-of-state betting sites, including Chester Downs, a racetrack outside of Philadelphia. The agreement gave Beulah Park and River Downs three percent of the money wagered on their races via the Chester Downs simulcast. The Association told the racetracks it would withhold consent unless they increased the figure to five percent. In response, Beulah Park and River Downs filed a complaint with the Ohio Racing Commission, claiming that the Association unreasonably withheld consent—which, under Ohio law, would permit the racetracks to simulcast their races to Chester Downs. *See* Ohio Rev. Code § 3769.089(G). In December 2006, the Racing Commission agreed, and before long Chester Downs began accepting bets on simulcasts of Beulah Park races.

The Association sued Beulah Park, River Downs, Chester Downs and members of the Racing Commission, arguing that the federal Interstate Horseracing Act preempted the Ohio law. The district court agreed and granted the Association's motion for judgment on the pleadings against the Racing Commission. The Association agreed to dismiss the racetrack defendants from the lawsuit, and the district court approved the dismissal over the State's objection.

## II.

Two statutes—one state, one federal—apply to this dispute. The federal Interstate Horseracing Act says:

> An interstate off-track wager may be accepted by an off-track betting
> system only if consent is obtained from—

> (1) the host racing association, except that—
>
>> (A) as a condition precedent to such consent, said racing association . . . must have a written agreement with the horsemen's group, under which said racing association may give such consent, setting forth the terms and conditions relating thereto.

15 U.S.C. § 3004(a). Beulah Park and River Downs are "host racing association[s]" under the Act, *id.* § 3002(9), and the Association is the exclusive "horsemen's group" affiliated with each one, *id.* § 3002(12). The federal law thus prohibits off-track betting on races at either racetrack without the host racing association's consent, and before Beulah Park and River Downs can give their consent, they must have a written agreement with the Association allowing them to give it.

The Ohio statute says:

> All televised simulcasts of horse races conducted in this state to racing associations, tracks, and facilities located outside this state shall comply with the "Interstate Horse Racing Act of 1978," 92 Stat. 1811, 15 U.S.C.A. 3001 to 3007. The consent of the horsemen's organization at the track of the permit holder applying to the commission to simulcast horse races conducted at the permit holder's track to racing associations, tracks, and facilities located outside this state shall not be unreasonably withheld and shall be consistent with the interest of preserving live racing. If a horsemen's organization withholds its consent, the permit holder may file an objection with the commission, which shall promptly consider the objection and determine whether the horsemen's organization's action in withholding consent is without substantial merit and, if the commission so determines, shall authorize the permit holder to simulcast the races. The determination of the commission is final.

Ohio Rev. Code § 3769.089(G). The law thus envisions a process by which racetracks can secure authorization to simulcast races even if they have not obtained consent from the horsemen's group.

Federal law preempts state law if the two "directly conflict"—if adherence to the one precludes adherence to the other. *PLIVA, Inc. v. Mensing*, 564 U.S. ___, 131 S. Ct. 2567, 2577 (2011). Just so here: The federal statute says that, "as a condition

precedent" to consenting to interstate off-track wagering, the host racing association "must have a written agreement with the horsemen's group" permitting it to give that consent. 15 U.S.C. § 3004(a). It follows that a state law is preempted if it allows a host racing association to consent to interstate off-track betting in the absence of a written agreement with the horsemen's group. The Ohio law does just that. If a horsemen's group refuses to sign a written agreement because it dislikes the proposed off-track-betting terms, the host racing association may petition the Racing Commission to authorize the betting anyway. To respect the state law is to slight the federal one.

Ohio insists that the Interstate Horseracing Act does not require the consent of the horsemen's group as a precondition to off-track betting; it requires only the consent of the host racing association. True. But if a horsemen's group refuses to sign a written agreement with the host racing association for any reason, including a refusal to consent to off-track betting, no betting occurs. In practice, as a result, the Act does require the consent of the horsemen's group. We recognized and upheld this "horsemen's veto" over off-track wagering in *Kentucky Division, Horsemen's Benevolent & Protective Ass'n v. Turfway Park Racing Ass'n*, 20 F.3d 1406 (6th Cir. 1994). We concluded that the veto is "rationally related to the horseracing industry's desire to avoid the harmful effects of unrestricted interstate off-track wagering," making it a legitimate exercise of congressional power. *Id.* at 1415. The horsemen's veto is an integral part of the Act, and because the Ohio statute would negate the veto in certain circumstances, it is preempted.

Ohio counters that the Act's requirements are satisfied here because there *are* written agreements between the Association and Beulah Park and River Downs. All the Act requires, the State explains, is (1) a written agreement between the horsemen's group and the host racing association, and (2) the consent of the host racing association, which need not be given in the written agreement. But that reasoning ignores part of the federal statute. To participate in off-track wagering, a host racing association must consent and "must have a written agreement with the horsemen's group, *under which said racing association may give such consent, setting forth the terms and conditions*

*relating thereto.*"  15 U.S.C. § 3004(a)(1)(A) (emphasis added).  Federal law thus requires more than just a written agreement between the host racing association and the horsemen's group; it requires that the host racing association's consent to off-track betting be given "under" the written agreement, which must "set[ ] forth the terms and conditions" of that consent.  *Id.*  The Act does not permit the host racing association to grant its consent to off-track wagering unless it follows the process outlined in the written agreement with the horsemen's group.  Yet that is just what the Ohio statute allows.  It purports to give host racing associations a way to consent to off-track wagering through a different process:  by petitioning the state Racing Commission to declare unreasonable the horsemen's group's decision to withhold consent.  Federal law preempts this alternative path.

### III.

Ohio also argues that the district court erred in dismissing the racetrack defendants from the case after they reached a settlement with the Association.  Dismissal was not appropriate, Ohio contends, because the Association seeks attorney's fees as a prevailing party, *see* 42 U.S.C. § 1988(b), and because the racetracks should be required to shoulder part of the burden of paying any attorney's fee award the district court imposes.  Ohio cites no authority, nor can we think of any, suggesting that a district court should reject a settlement between a plaintiff and some defendants on the ground that the plaintiff might later try to seek attorney's fees against the non-settling defendants.  Ohio, for what it is worth, is not without a remedy.  Before the district court rules on any request for attorney's fees, the State may argue that it should not be held liable for fees the Association incurred as a result of the racetrack defendants' involvement in this litigation.  *See, e.g.*, *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 641 (6th Cir. 2009); *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 897–98 (D.C. Cir. 2004).  No error occurred.

### IV.

For these reasons, we affirm.